IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Charlotte Division
Civil Action No. 3:22-cv-30

| | |
|---|---|
| SHAYLA ADDISON & SHANTEL ADDISON, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| UWD OF CHARLOTTE, LLC & UNIVERSAL WINDOWS DIRECT OF CHARLOTTE, INC. | ) ) ) |
| Defendants. | |

**COMPLAINT**

**JURY TRIAL DEMANDED**

## I. INTRODUCTION

1. Plaintiffs Shayla Addison and Shantel Addison ("Shayla," "Shantel," or "Plaintiffs") were outstanding employees for UWD of Charlotte, LLC and Universal Windows Direct of Charlotte, Inc. (collectively, "the Company"). But Shayla and Shantel quickly learned that the terms and conditions of their white and male peers' employment were superior to theirs—they are both black women. The Company paid Shayla and Shantel less for the same work and discriminatorily enforced company policies against them.

2. Shayla and Shantel stood up for their rights, and the Company fired them for doing so. They both complained about workplace discrimination. Not long after this protected activity, the Company fired Shayla and Shantel in retaliation for their discrimination complaints and on the basis of their race and sex.

3. Plaintiffs now turn to this Court to be made whole for their harms and losses. Plaintiffs bring this action against Defendants for violations of Title VII of the Civil Rights Act of 1964 (Count I), 42 U.S.C. § 1981 (Count II), and Wrongful Discharge in Violation of North Carolina Public Policy (Count III).

## II. PARTIES, JURISDICTION, AND VENUE

4. Plaintiffs are residents of Mecklenburg County, North Carolina.

5. Defendant UWD of Charlotte, LLC is, and at all relevant times was, a North Carolina corporation, with its principal place of business at 3101 Yorkmont Road, Suite 300, Charlotte, North Carolina 28208 and its registered office at 160 Mine Lake Court, Suite 200, Raleigh, North Carolina 27615.

6. Defendant Universal Windows Direct of Charlotte, Inc. is, and at all relevant times was, a North Carolina corporation, with its Registered Office at 4147 Sinclair Street, Denver, North Carolina 28037.

7. Plaintiffs worked for the Company at its 3101 Yorkmont Road, Suite 300, Charlotte, North Carolina 28208 location.

8. Venue is proper in the Western District of North Carolina because: (a) Defendants' unlawful employment practices were committed in Mecklenburg County, North Carolina; (b) Plaintiffs would have worked in Mecklenburg County, North Carolina but for Defendants' unlawful employment practices; (c) Defendants reside in Mecklenburg County, North Carolina because they are subject to the Court's personal jurisdiction here in light of their presence in Mecklenburg County and elsewhere in the Western District of North Carolina; and (d) a

substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Mecklenburg County, North Carolina and elsewhere in the Western District of North Carolina.

### III. FACTUAL STATEMENT

9. Shantel began working for the Company on or around February 14, 2019. Her sister Shayla joined her at the Company on or around July 29, 2019, when she started working there as well. After Shayla's interview with Mr. Wiseman, he told her that the Company would pay her $12 per hour. This rate mirrored that of others in her position.

10. However, on or around July 24, 2019, Stephanie Riley in Human Resources called Shayla and said she would make $10 per hour—$2 lower than the her male coworkers in a similar position. Shayla felt something was amiss. Roughly two weeks after her start date, Shayla spoke with Mr. Wiseman again to get her pay raised to the promised starting wage.

11. On or around September 23, 2019, Shayla and Shantel requested PTO, and asked Josh Walczuk for a form, which they never received. Mr. Walczuk informed them he would make the necessary changes himself. The sisters took their PTO on or around September 26 through September 28. After returning and being paid, they noticed the PTO was not on their paychecks. Company gas card reimbursements were also absent. They approached Mr. Wiseman about the issue. He told them that only salaried employees get PTO. After speaking with their male hourly coworkers, Shayla and Shantel learned that Mr. Wiseman's statement was false—Shayla and Shantel's non-salaried male peers had been able to take paid time off.

12. In September 2019, a manager in training told Shayla and Shantel that a former boss had inquired, "Why does he [the hiring manager] hire so many black girls?"

13. In early November 2019, management met with each employee individually to discuss the Company's new pay policy. Shayla learned she would be kept at $10/hour. After the meeting, Shayla overheard a male coworker say that the Company gave him a raise. Yet, Mr. Wiseman had just told Shayla the Company could not afford to give her $12/hour.

14. Later in November, Shayla overheard a conversation between two new male coworkers. One said he started at $11.25/hour. By this time, Shayla had been with the Company for approximately four months. Yet, the Company paid her less than a new male employee. At around the same time, one of Shantel's male, non-salaried coworkers told her that he was paid 16 hours of holiday pay, while neither Shayla nor Shantel received a dime.

15. On November 17, 2019, Shayla engaged in protected activity by emailing Stephanie Riley in Human Resources. She detailed gender-based favoritism, racial discrimination, and general sex discrimination in the office. Approximately two days later, Ms. Riley called Shayla and made light of her concerns.

16. On November 18, 2019, Shayla and Shantel spoke to Jeff Kouns about their PTO and gas cards missing off of their paychecks. Mr. Kouns said what Mr. Wiseman and Mr. Walczuk told them was untrue and that he would remedy the situation. However, their November 28, 2019, checks came and, much to their dismay, the situation had not been remedied. The sisters reached out to Mr. Kouns again, but to no avail.

17. On December 4, 2019, Shayla met with Ms. Riley, who told Shayla that she was fired. She said the Company made its decision because it learned that she was clocking in at unauthorized locations. Shayla told her that neither her nor her coworkers had ever been told where to clock in and out. She denied that she did anything improper and asked for other

4

termination reasons. Ms. Riley had nothing else to add. This explanation was pretext for illegal sex and race discrimination and retaliation.

18. On this same day, Shantel also met with Ms. Riley, who informed her she was being written up for the same issue. An audit showed that her location settings for Paycor were turned off. Shantel had never previously received any Paycor coaching. Wiseman said that he spoke to Shantel's male coworkers about the same issue, but this proved to be false. Shantel spoke with her male coworkers individually, and they denied that this took place. Shantel told Ms. Riley and Mr. Wiseman that she felt she was being discriminated against. Shantel also wrote an email to Bill Bar, the Company's Owner addressing the discrimination issues. She also forwarded the email to Ms. Riley after receiving no response from Mr. Bar.

19. On December 17, 2019, Shantel met with John Kosmides, the Director of Marketing. During the meeting, he asked Shantel how she felt about the Company. She raised her concerns about Mr. Wiseman and Ms. Riley and explained how she felt discriminated on the basis of her race and sex. Mr. Kosmides asked Shantel if she was looking for other places to work, and suggested if she was not happy, he wouldn't want her to work for the Company.

20. On December 30, 2019, Shantel received a call from Mr. Kosmides, asking her to meet with him the following day. Shantel assumed this would be about the issues she had brought up. Instead, Shantel found HR in the meeting. The Company fired her. They told her the termination was due to her leaving her Paycor settings off. This was pretext for illegal sex and race discrimination and retaliation.

21. Shayla and Shantel timely filed Charges of Discrimination with the Equal Employment Opportunity Commission, which issued Right to Sue letters on October 29, 2021.

5

Case 3:22-cv-00030-RJC-DSC   Document 1   Filed 01/25/22   Page 5 of 12

## IV.     LEGAL CLAIMS

### Count One
### *(Violations of Title VII of the Civil Rights Act of 1964)*

22. The allegations contained in the foregoing paragraphs are incorporated by reference herein.

23. Plaintiff Shayla Addison is an African American female.

24. Plaintiff Shantel Addison is an African American female.

25. Defendants had more than fifteen (15) employees at all relevant times and otherwise meets all requirements to be deemed an employer as defined in 42 U.S.C. § 2000e(b) subject to the prohibitions of Title VII.

26. Defendants are, and at all relevant times were, employers as defined in 42 U.S.C. § 2000e(b).

27. Title VII prohibits discrimination on the basis of sex.

28. Title VII prohibits discrimination on the basis of race.

29. Title VII prohibits retaliation for complaining about race discrimination.

30. Title VII prohibits retaliation for complaining about sex discrimination.

31. Defendants violated Title VII by terminating Plaintiff Shayla Addison's employment on the basis of her sex.

32. Defendants violated Title VII by terminating Plaintiff Shayla Addison's employment on the basis of her race.

33. Defendants violated Title VII by terminating Plaintiff Shantel Addison's employment on the basis of her sex.

34. Defendants violated Title VII by terminating Plaintiff Shantel Addison's employment on the basis of her race.

35. Defendants violated Title VII by terminating Plaintiff Shayla Addison's employment in retaliation for her race discrimination and gender discrimination complaints.

36. Defendants violated Title VII by terminating Plaintiff Shantel Addison's employment in retaliation for her race discrimination and gender discrimination complaints.

37. As an actual, proximate, and foreseeable consequence of Defendants' conduct, Plaintiff Shayla Addison has suffered lost income, emotional distress, anxiety, humiliation, expenses, and other damages and is entitled to recover compensatory damages in an amount to be determined by the jury.

38. As an actual, proximate, and foreseeable consequence of Defendants' conduct, Plaintiff Shantel Addison has suffered lost income, emotional distress, anxiety, humiliation, expenses, and other damages and is entitled to recover compensatory damages in an amount to be determined by the jury.

39. Defendants' actions were done maliciously, willfully or wantonly, and in a manner that demonstrates a reckless disregard for Shayla Addison's rights. As a result of Defendants' conduct, Plaintiff is entitled to recover punitive damages in an amount to be determined by the jury.

40. Defendants' actions were done maliciously, willfully or wantonly, and in a manner that demonstrates a reckless disregard for Shantel Addison's rights. As a result of Defendants' conduct, Plaintiff is entitled to recover punitive damages in an amount to be determined by the jury.

41. The Company's officers, directors, and managers participated in and condoned the malicious, willful, wanton, and reckless conduct alleged above.

## Count Two
### *(Violations of Section 1981 of the Civil Rights Act of 1866)*

42. The allegations contained in the foregoing paragraphs are incorporated by reference herein.

43. Plaintiff Shayla Addison is an African American female.

44. Plaintiff Shantel Addison is an African American female.

45. The foregoing allegations against Defendant constitute a deprivation of Plaintiffs' right to make and enforce contracts on the same terms enjoyed by white persons, and otherwise constitute discriminatory conduct on the basis of race against Plaintiffs, in violations of 42 U.S.C. § 1981.

46. Defendant violated Section 1981 by terminating Plaintiff Shayla Addison's employment on the basis of her race and color and in retaliation for her opposition to such discrimination.

47. Defendant violated Section 1981 by terminating Plaintiff Shantel Addison's employment on the basis of her race and color and in retaliation for her opposition to such discrimination.

48. As an actual, proximate, and foreseeable consequence of Defendants' conduct, Plaintiff Shayla Addison has suffered lost income, emotional distress, anxiety, humiliation, expenses, and other damages and is entitled to recover compensatory damages in an amount to be determined by the jury.

49. As an actual, proximate, and foreseeable consequence of Defendants' conduct, Plaintiff Shantel Addison has suffered lost income, emotional distress, anxiety, humiliation, expenses, and other damages and is entitled to recover compensatory damages in an amount to be determined by the jury.

50. Defendants' actions were done maliciously, willfully or wantonly, and in a manner that demonstrates a reckless disregard for Shayla Addison's rights. As a result of Defendants' conduct, Plaintiff is entitled to recover punitive damages in an amount to be determined by the jury.

51. Defendants' actions were done maliciously, willfully or wantonly, and in a manner that demonstrates a reckless disregard for Shantel Addison's rights. As a result of Defendants' conduct, Plaintiff is entitled to recover punitive damages in an amount to be determined by the jury.

52. The Company's officers, directors, and managers participated in and condoned the malicious, willful, wanton, and reckless conduct alleged above.

## **Count Three**
*(Wrongful Discharge in Violation of Public Policy)*

53. The allegations contained in the foregoing paragraphs are incorporated by reference herein.

54. Plaintiff Shayla Addison is an African American female.

55. Plaintiff Shantel Addison is an African American female.

56. Plaintiffs were at-will employees of Defendant.

57. Defendant employed at least fifteen (15) employees at all relevant times.

58. The public policy of North Carolina, codified in the North Carolina Equal Employment Practices Act, N.C. Gen. Stat. § 143-422.2(a), seeks to protect and safeguard the opportunity and right of all individuals to "seek, obtain, and hold employment without discrimination" on the basis of race, religion, color, national origin, age, sex or handicap.

59. Defendant violated this public policy by terminating Plaintiff Shayla Addison's employment on the basis of her sex.

60. Defendant violated this public policy by terminating Plaintiff Shayla Addison's employment on the basis of her race.

61. Defendant violated this public policy by terminating Plaintiff Shantel Addison's employment on the basis of her sex.

62. Defendant violated this public policy by terminating Plaintiff Shantel Addison's employment on the basis of her race.

63. As an actual, proximate, and foreseeable consequence of Defendants' conduct, Plaintiff Shayla Addison has suffered lost income, emotional distress, anxiety, humiliation, expenses, and other damages and is entitled to recover compensatory damages in an amount to be determined by the jury.

64. As an actual, proximate, and foreseeable consequence of Defendants' conduct, Plaintiff Shantel Addison has suffered lost income, emotional distress, anxiety, humiliation, expenses, and other damages and is entitled to recover compensatory damages in an amount to be determined by the jury.

65. Defendants' actions were done maliciously, willfully or wantonly, and in a manner that demonstrates a reckless disregard for Shayla Addison's rights. As a result of Defendants'

conduct, Plaintiff is entitled to recover punitive damages in an amount to be determined by the jury.

66. Defendants' actions were done maliciously, willfully or wantonly, and in a manner that demonstrates a reckless disregard for Shantel Addison's rights. As a result of Defendants' conduct, Plaintiff is entitled to recover punitive damages in an amount to be determined by the jury.

67. The Company's officers, directors, and managers participated in and condoned the malicious, willful, wanton, and reckless conduct alleged above.

## JURY TRIAL DEMANDED

WHEREFORE, the Plaintiffs pray the Court to:

1. Enter a judgment against Defendants and order Defendants to pay Plaintiff Shayla Addison compensatory damages in an amount to be determined at trial.

2. Enter a judgment against Defendants and order Defendants to pay Plaintiff Shantel Addison compensatory damages in an amount to be determined at trial.

3. Award Plaintiff Shayla Addison punitive damages under 42 U.S.C. § 1981 *et seq.*, 42 U.S.C. § 1981a *et seq.* and N.C. Gen. Stat. § 1D-15;

4. Award Plaintiff Shantel Addison punitive damages under 42 U.S.C. § 1981 *et seq.*, 42 U.S.C. § 1981a *et seq.* and N.C. Gen. Stat. § 1D-15;

5. Award Plaintiff Shayla Addison all reasonable costs and attorneys' fees incurred in connection with this action;

6. Award Plaintiff Shantel Addison all reasonable costs and attorneys' fees incurred in connection with this action;

7. Award Plaintiff Shayla Addison such other and further equitable relief as the Court deems appropriate under the circumstances;

8. Award Plaintiff Shantel Addison such other and further equitable relief as the Court deems appropriate under the circumstances;

9. Grant Plaintiff Shayla Addison a trial of this matter by a jury; and

10. Grant Plaintiff Shantel Addison a trial of this matter by a jury.

This the 25th day of January, 2022.

*/s/ Sean F. Herrmann*
Sean F. Herrmann
North Carolina Bar No. 44453
Kevin P. Murphy
North Carolina Bar No. 41467
Herrmann & Murphy, PLLC
400 Clarice Ave, Ste 100
Charlotte, North Carolina 28204
Phone: 704-940-6399
Fax: 704-940-6407
Email: kevin@herrmannmurphy.com
Email: sean@herrmannmurphy.com

*Attorneys for Plaintiffs*